**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**JERMAIN SANTELL HILL,**

      **Movant,**

**v.**                      **Case No. 2:18-cv-00075
Criminal Case Nos. 2:15-cr-00026
2:16-cr-00210**

**UNITED STATES OF AMERICA,**

      **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

      Pending before the court are Movant Jermain Santell Hill's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, (ECF No. 46); Motion for Bond, (ECF No. 53); Motion to Amend, (ECF No. 59); Motions for Appointment of Counsel, (ECF No. 67, 87); Motions for Summary Judgment, (ECF Nos. 68, 79, 80, 88, 89); Motion for Appointment of Guardian *Ad Litem*, (ECF No. 72); Motion to Reduce or Correct Sentence, (ECF No. 82); and Motion for Writ of Mandamus, (ECF No. 83). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition ("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B).

      The undersigned **GRANTS** Hill's Motion to Amend. (ECF No. 59). However, for the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's §

2255 motion, (ECF No. 46), and other pending motions, (ECF Nos. 53, 59, 67, 68, 72, 79, 80, 82, 83, 87, 88, 89), be denied and this matter be dismissed, with prejudice, and removed from the docket of the court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## I.    <u>Factual and Procedural Background</u>

### A.    *"2014 Case"*

In 2014, a federal grand jury returned a superseding indictment, charging Movant Jermain Santell Hill ("Hill") with one count of possession of a firearm by a convicted felon and one count of possession of a firearm by an individual with a misdemeanor domestic violence conviction. *United States v. Hill* ("*Hill I*"), No. 2:14-cr-00093, ECF No. 15. The United States dismissed the first count of the superseding indictment, but the second count that charged Hill with possessing a firearm despite his domestic violence conviction remained pending. *Id.* at ECF No. 28.

### B.    *"2015 Case"*

In 2015, Hill was charged by federal information with possession with intent to distribute crack cocaine. *United States v. Hill* ("*Hill II*"), No. 2:15-cr-00026, ECF No. 1. The Court appointed John Carr ("Carr") to represent Hill. *Hill I* at ECF No. 4. Hill waived his right to be charged by indictment and entered into a plea agreement in which he agreed to plead guilty to the drug charge in the information. In exchange, the United States agreed to dismiss the pending charge in *Hill I. Id.* at ECF No. 9. The Court accepted Hill's guilty plea following a Fed. R. Crim. P. 11 plea colloquy, and imposed Hill's judgment of conviction on May 28, 2015. *Id.* at ECF No. 20; (ECF Nos. 93-1, 93-2). On December 31, 2015, Hill completed his period of incarceration and began a three-

year term of supervised release. *Hill II,* No. 2:15-cr-00026, ECF No. 25.

However, as discussed in additional detail below, Hill's supervised release was revoked on June 13, 2017 when Hill was charged with possessing a firearm and violating the terms of his supervised release. *Id.* at ECF Nos. 42, 44. The Court sentenced Hill on September 8, 2017 to eight months of incarceration for violating his terms of supervised release. *Id.* at ECF No. 44.

### C.    "2016 Case"

In October 2016, Hill was arrested by state authorities after officers conducting a traffic stop on the west side of Charleston, West Virginia heard a gunshot in the vicinity and ran toward the direction of the sound. One of the officers observed Hill in the area where the shot emanated and saw him drop what was later identified as a loaded pistol. *United States v. Hill* ("*Hill III*"), No. 2:16-cr-00210, ECF Nos. 51 at 1-2, 55 at 4-5. As a result of the incident, a federal grand jury returned an indictment, charging Hill with possession of a firearm by a convicted felon. *Id.*, ECF No. 1. Due to this offense and other violations, a petition was also filed seeking to revoke Hill's supervised release in his 2015 case. *Hill II*, No. 2:15-cr-00026, ECF No. 25.

Carr continued to represent Hill in *Hill II* and was appointed as defense counsel in *Hill III*. In January 2017, less than two weeks before Hill's trial was scheduled to begin in *Hill III*, the government produced to the defense a laboratory report, indicating that swabs of Hill's face and hand taken after his arrest were positive for gunshot residue. *Id.* at ECF No. 17. Given that the United States intended to offer such evidence through an expert at trial, Carr sought a continuance in order to review the results and retain a rebuttal expert. *Id.* Hill reportedly disagreed that a continuance was necessary, arguing that the amount of alleged gunshot residue on his face and hand was not consistent with

firing a gun and could be explained by the fact that Hill was around fireworks or fountain sparklers that day. (ECF No. 78 at 9). Shortly thereafter, in February 2017, Carr withdrew as counsel due to a reported irreconcilable breakdown in communication between Carr and Hill. *Hill II*, No. 2:15-cr-00026, ECF Nos. 38, 39; *Hill III*, No. 2:16-cr-00210, ECF Nos. 20, 23.

Gary Collias ("Collias") was then appointed to represent Hill in both pending actions. In April 2017, the United States again provided laboratory results two weeks before trial was scheduled to begin. *Hill III*, No. 2:16-cr-00210, ECF No. 42. The report indicated that swabs of the magazine of the pistol that Hill was accused of possessing contained a mixture of DNA and the primary results were consistent with Hill's DNA profile. (ECF No. 89 at 8). The swabs of other portions of the pistol revealed a mixture of DNA from two or more individuals. (*Id.*). However, due to the sample's small amount and stochastic effects observed, the report stated that Hill could not be included, nor excluded, as the contributor to the DNA on the rest of the pistol. (*Id.*).

As the government announced its intention to offer the DNA evidence at trial, Collias sought a continuance to secure a DNA expert and obtain additional documents related to the DNA testing. *Hill III*, No. 2:16-cr-00210, ECF No. 42. Hill's trial was continued until June 13, 2017. *Id.* at ECF No. 43. For his defense to the DNA evidence, Hill claimed that during an argument with the individual who was holding the gun, Hill knocked the gun out of the individual's hand, thereby transferring some of his DNA onto the gun. (ECF No. 78 at 10). Nevertheless, on May 30, 2017, Hill entered into a plea agreement in which he agreed to plead guilty to the felon in possession of a firearm charge and not to contest the supervised release violations in *Hill II*. *Id.* at ECF No. 49. He also agreed to waive his right to seek appellate or collateral review of his conviction

4

or sentence, with the exception of claims based on the ineffective assistance of counsel. *Id.* at 5. The Court held a thorough plea colloquy hearing before accepting Hill's guilty plea. (ECF No. 93-3). On September 7, 2017, the Court sentenced Hill to 37 months of imprisonment to be served consecutively to his eight-month supervised release revocation sentence imposed in *Hill II. Id.* at 53 at 2.

### D.    § 2255 Motion

On January 16, 2018, Hill filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Hill alleged that his court-appointed attorneys, Carr and Collias, failed to provide adequate legal representation in his 2016 case. (ECF No. 46). Hill specifically alleged that Carr (1) waived his pretrial hearing without his knowledge or consent; (2) allowed the United States to introduce remote, extrinsic, and prejudicial evidence; and (3) continued his trial date against his wishes. (*Id.* at 1). Hill asserted that Collias was likewise ineffective because he (1) insisted that Hill "take a plea right from the beginning, despite exculpatory evidence;" (2) did not raise the issue of Hill's "mental disability" to the court; and (3) never addressed a motion *in limine* filed by Hill. (*Id.* at 1-2).

On February 27, 2018, Hill filed what he entitled a supplemental/amended pleading in support of his § 2255 motion. (ECF No. 54). Hill asserted that Carr's representation was also deficient in *Hill II.* Hill alleged that Carr (1) did not address the issue of his mental disability and (2) misguided Hill by advising him that there was no difference in pleading guilty to the firearm violation charged in the indictment versus the narcotics violation charged in the information. (*Id.* at 2). According to Hill, he was prejudiced by pleading guilty to the narcotics charge instead of the firearm charge, because the narcotics conviction could count as a predicate offense toward career

offender status in the future. (*Id.*).

Hill filed another document on March 23, 2018, which he stated was a § 2255 motion that related to his 2015 conviction. (ECF No. 57). Hill adduced the same arguments that he raised in the foregoing supplemental/amended pleading, alleging that Carr did not address the issue of his mental disability and misguided him regarding the consequences of pleading guilty to the narcotics violation, which subjected him to potential career offender status in the future. (*Id.* at 1-2). However, Hill further added a claim that Carr declined to accept or submit an affidavit that supported Hill's innocence. (*Id.* at 2). Hill also indicated that his guilty plea was involuntary in *Hill II* due to his mental disability. (*Id.*).

On March 30, 2018, the undersigned entered an order noting that Hill continued to supplement his § 2255 motion without leave of court. (ECF No. 58 at 1). Hill was allotted 20 days to assert any remaining claims that he intended to include in this action, but he did not need to reassert any of the claims that he already raised. (*Id.*). The undersigned specifically advised Hill that he would not be permitted to supplement his motion any further following the expiration of the above deadline. (*Id.*).

In accordance with the order, on April 10, 2018, Hill filed a motion seeking to supplement or amend his previous filings. (ECF No. 59). Hill asserted additional claims that Carr and Collias did not provide effective representation in *Hill III*. Specifically, Hill stated that his attorneys failed to subpoena three individuals who called 911 right after the incident that led to his arrest and charge for possession of a firearm. (*Id.* at 1-2). Hill identified the 911 callers as Steven Kenny ("Kenny"), Cynthia Burdette ("Burdette"), and David Ford ("Ford"). (ECF Nos. 59, 66). He contended that the testimony from the 911 callers would have been "instrumental to his trial defense" because their "accounts of

the alleged incident were consistent with [Hill's] account in so much that they suggested that other individuals were present." (ECF No. 59 at 1). According to Hill, Burdette and Ford would have attested to the fact that they heard people arguing, as stated in their 911 calls, and Kenny would have testified that he heard Hill arguing with a person, who appeared to be the aggressor, and that Kenny never saw Hill with a firearm or believed that Hill possessed a firearm. (ECF Nos. 59, 66). Hill claimed that Kenny stated to the 911 dispatcher that he "knew who the perpetrators were." (ECF No. 59 at 1). In this supplemental pleading, Hill reiterated that Collias insisted that he plead guilty and brought him "a plea offer just days before trial with a two day deadline to sign." (*Id.*).

The United States filed a response to Hill's § 2255 motion, and Hill's prior attorneys, Carr and Collias, filed affidavits responding to his allegations of ineffective assistance of counsel. (ECF Nos. 52, 55, 60, 75, 84). The United States contends that Hill's claims regarding *Hill II* must be dismissed as untimely under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). (ECF No. 75 at 5); *see* 28 U.S.C. §2255(f). Furthermore, the United States argues that Hill failed to carry his burden of demonstrating ineffective assistance of counsel. (*Id.* at 6-15).

On April 15, 2018, Hill filed another supplemental motion, stating that when the Court appointed Collias to replace Carr as Hill's counsel in *Hill III*, the court advised Hill that no further appointment of counsel would be made. (ECF No. 61). Hill contends that such warning was "erroneous and prejudicial," and thereby forced Hill to continue with Collias as his attorney even though Collias was ineffective. (*Id.*). According to Hill, because he knew that the court would not appoint another attorney, he signed a plea deal "under duress" rather than risk going to trial with his "deficient counsel." (*Id.*).

On January 28, 2019, well after the June 2018 deadline within which Hill was

permitted to amend or supplement his § 2255 motion, Hill filed a motion challenging the sentence that he received in *Hill III*. (ECF No. 82). Hill argued that he was punished twice for the same conduct of possessing a firearm while on supervised release, because that offense formed the basis of his supervised release revocation sentence in *Hill II* and a two-point sentence enhancement in *Hill III*. He asks the court to "reconsider the consecutive sentence that it imposed." (*Id.* at 1)

In addition to the above, Hill has numerous other pending motions in this matter. He seeks to be (1) released on bond while awaiting resolution of his § 2255 motion, (ECF No. 53); (2) appointed counsel in this habeas proceeding because he is indigent, (ECF Nos. 67, 87); and (3) appointed a guardian *ad litem* under Rule 17(c) of the Federal Rules of Civil Procedure, because he was "adjudicated to be incompetent by the Social Security Administration." (ECF No. 72). Hill also asks the court to preclude consideration of Carr's untimely supplemental affidavit. (ECF No. 83). Moreover, Hill has filed numerous motions for summary judgment, (ECF Nos. 68, 79, 80, 88, 89), as well as a motion to reduce or correct his sentence in *Hill III.* (ECF No. 82).

## II.    <u>**Standard of Review**</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No.

2:02-CR-65, 2:05-CV-91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006).

Pursuant to the Rules Governing Section 2255 Proceedings, the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, and 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## III. **Discussion**

As indicated, Hill's § 2255 motion challenges two separate convictions. The undersigned first addresses the timelines of Hill's claims related to *Hill II.* Second, the undersigned addresses Hill's assertion that he was not competent to enter guilty pleas due to his mental disability. Third, the undersigned addresses Hill's belated challenge to the sentence that he received in *Hill III.* Fourth, the undersigned considers Hill's remaining claims, which concern alleged ineffective assistance of counsel by Carr and Collias in *Hill III.* Finally, the undersigned addresses Hill's other pending motions.

### A. *Hill's Claims Regarding Hill II are Time-Barred*

Hill alleges that Carr's legal representation in *Hill II* was constitutionally deficient because Carr did not raise the issue of Hill's mental competency, properly explain the consequences of pleading guilty to a narcotics charge, or submit an affidavit that supported Hill's innocence. (ECF Nos. 54, 57). The United States argues that Hill's

claims concerning his 2015 conviction in *Hill II* are untimely under the AEDPA and must

be dismissed. (ECF No. 75 at 5-6).

Under the AEDPA, a § 2255 motion must be filed within one year of the latest of

the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized  by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In this case, Hill was required to file his § 2255 motion within one year of the date

on which his judgment became final under 28 U.S.C. § 2255(f)(1) because Hill does not

assert any basis that the other three starting dates under 28 U.S.C. § 2255(f)(2)-(3) are

applicable to his motion. Hill's claims regarding *Hill II* relate to his narcotics conviction

in 2015, not the subsequent revocation of his supervised release in September 2017.

Thus, the one-year calculation began in June 2015—fourteen days after his judgment of

conviction was entered, and the deadline expired in June 2016. Fed. R. App. P. 4(b)

(stating that the defendant has 14 days to file a notice of appeal). However, Hill did not

file his § 2255 motion until March 2018.

In response to the government's assertion that his *Hill II* claims are time-barred,

Hill contends that he is entitled to "the actual innocence exception" to the one-year

limitation period on the basis that Carr refused to submit an unspecified affidavit that "would have exonerated [Hill]" in *Hill II*. (ECF Nos. 78 at 5; 89 at 6). "[A]lthough a claim of actual innocence may overcome Section 2255(f)'s statute of limitations, 'tenable actual-innocence gateway pleas are rare.'" *Dailey v. United States*, No. 7:14-CR-72-BO, 2019 WL 206087, at *2 (E.D.N.C. Jan. 11, 2019) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386, 392–97 (2013)). To succeed in raising a credible claim of actual innocence, Hill must offer reliable new evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial and in light of which it becomes 'more likely than not that no reasonable juror would have convicted him.'" *Barnett v. Quintana*, No. 5:18-CV-00279, 2018 WL 7078579, at *12 (S.D.W. Va. Dec. 18, 2018), *report and recommendation adopted,* No. 5:18-CV-00279, 2019 WL 267731 (S.D.W. Va. Jan. 18, 2019) (citations omitted).

Hill does not offer any compelling new evidence establishing he was actually innocent of the crime of which he was convicted in *Hill II*. Hill does not explain or demonstrate how the affidavit that he references proves his actual innocence. Furthermore, the affidavit is certainly not new evidence, as Hill admits that it was available at the time of his plea in *Hill II*. *See, e.g., Brown v. United States*, No. CR 06-0179, 2018 WL 3241344, at *3 (D. Md. July 3, 2018) (holding that the affidavit that the petitioner purported to show his actual innocence to overcome the one-year filing limitation was not new evidence, as it contained information that the petitioner knew at the time of his guilty plea).

Hill also argues that the one-year period of limitation should be equitably tolled given that he suffers from a "mental disability." (ECF No. 78 at 6). The United States

Court of Appeals for the Fourth Circuit ("Fourth Circuit") has long recognized that the AEDPA statute of limitations can be tolled in "rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitations period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). Similarly, the Supreme Court of the United States confirmed in *Holland v. Fla.*, 560 U.S. 631, 649 (2010), that equitable tolling should only be extended when a habeas petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."

"As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004); *United States v. Najera*, No. 7:12CR00066-03, 2017 WL 1612818, at *2 (W.D. Va. Apr. 28, 2017). Hill has not offered any evidence in this case that his mental disability rises to such a level of incapacity, and "his diligence in seeking to vacate or modify his sentence indicates quite clearly that his is not an extraordinary case." *Sosa*, 364 F.3d at 513.

Hill provided a letter from the Social Security Administration, which states that he was approved for Supplemental Security Income ("SSI") in May 2007 and that his diagnosis, according to the agency's records, was "Organic Mental Disorders and Anxiety Disorders." (ECF No. 69). He also attached a page from what appears to be the report of a consultative mental status examination performed by psychologist, Lisa C. Tate, in May 2014. (ECF No. 80 at 3). According to the report, Hill recounted to Ms. Tate that he was diagnosed with an organic mental disorder in 2007 or 2008 after he was shot in the head. (*Id.*). He reported concentration and memory issues, as well as frequent

12

headaches. (*Id.*). During testing in April 2007, Hill reportedly received a verbal IQ score of 64, performance IQ score of 60, and full scale IQ score of 59. (*Id.*).

Notwithstanding his mental impairment, Hill filed this action and has consistently filed numerous motions, responses, and supplements to his § 2255 motion, all of which are articulate and rational. Although Hill indicates that he paid other inmates to assist him with the case, he nonetheless has been able to effectively prosecute this action and has not offered any justifiable reason why he could not have done so within one year of his judgment becoming final in *Hill II*. Simply put, the AEDPA period should not be equitably tolled when Hill offers no extraordinary circumstance beyond his control that prevented him from timely filing his *Hill II* claims. *See, e.g., United States v. Turner*, No. 2:09CR00003, 2013 WL 1796013, at *2–3 (W.D. Va. Apr. 29, 2013) (discussing that mental incompetence or mental illness does not automatically warrant equitable tolling, but rather the petitioner must allege facts sufficient to show a causal relationship between the mental disability and belated submission of the § 2255 motion).

Therefore, given that Hill's claims relating to his conviction and sentence in *Hill II* are untimely, and he does not allege any new evidence supporting his actual innocence or provide a justifiable basis for equitable tolling, the undersigned **FINDS** that Hill's claims relating to his 2015 conviction and sentence in *Hill II* must be dismissed under the limitations provision of the AEDPA.

### B.    *Hill Does Not Assert a Viable Claim that His Guilty Pleas Were Involuntary*

Hill asserts that he was not competent to enter guilty pleas in *Hill II* and *Hill III*, because he was diagnosed with an "organic mental disorder" and granted SSI. (ECF No.

68). He also indicates that he pled guilty in *Hill III* "under duress" because he could not risk going to trial with his deficient counsel, Collias, after the Court had advised him that he would not be appointed another attorney. (ECF No. 61).

As noted, Hill is precluded from challenging his conviction and sentence in *Hill II*. With respect to his conviction and sentence in *Hill III*, which were entered in 2017, Hill's collateral attack is timely, yet he fails to assert any viable challenge to the voluntary nature of his guilty pleas based on alleged mental incompetency. Furthermore, as explained below, Hill fails to demonstrate that he entered the guilty plea under duress.

In support of his claims, Hill has provided documentation demonstrating that he was awarded SSI by the Social Security Administration in May 2007 due to an organic mental disorder and anxiety disorder. (ECF No. 69). According to one evaluation, Hill suffered concentration and memory issues, had frequent headaches, and had a mild mental disability based upon IQ scores and COGNISTAT testing. (ECF No. 80 at 3).[1] However, of note, the paperwork supplied by Hill does ***not*** document that he is or was incompetent, (ECF Nos 69 at 1; 80 at 2-3), and both of Hill's counsel attest to his competency throughout their representation of him. (ECF Nos. 52 at 4-5, 84 at 1).

In terms of a defendant's mental competence to enter a guilty plea, the standard is the same as a defendant's competence to stand trial. *Godinez v. Moran*, 509 U.S. 389, 397-99 (1993). The defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Id.* at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "Competency claims can raise issues of both

---

[1] *See* Diagnostic and Statistical Manual of Mental Disorders IV, American Psychiatric Association (1994) at 40 (indicating that IQ scores between 50-55 and 70 are classified as a mild intellectual disability).

14

procedural and substantive due process." *Beck v. Angelone*, 261 F.3d 377, 387 (4th Cir. 2001). For instance, "a petitioner may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the petitioner's mental competency was put in issue." *Id.* In order to prevail on such a claim, "the petitioner must establish that the trial court ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial." *Id.* (citing *Pate v. Robinson,* 383 U.S. 375, 384-86 (1966)). Alternatively, "a petitioner may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent." *Id.* A petitioner raising a substantive competency claim must demonstrate his incompetency by a preponderance of the evidence. *Id.*

Not every manifestation of mental illness or defect demonstrates incompetence to stand trial or plead guilty; rather, the evidence must indicate that the defendant has a present inability to assist counsel or understand the charges. *Id.* (citation and markings omitted). "Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence" to stand trial or plead guilty. *Id.* Ultimately, "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," a court may grant a motion seeking—or may *sua sponte* order—a competency hearing under 18 U.S.C. § 4241. *See* 18 U.S.C. § 4241.

A criminal defendant's guilty plea is only constitutionally valid "to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998). Therefore, before accepting a guilty plea, a district court must conduct a plea colloquy under Rule

11 of the Federal Rules of Criminal Procedure to determine that the defendant comprehends the nature of the charges to which he is pleading guilty, the maximum possible penalty that he could face, any mandatory minimum penalty for such crime(s), and the rights that he relinquishes by pleading guilty. *Hernandez v. United States*, No. 3:14-CR-82-RJC-8, 2018 WL 3381429, at *6 (W.D.N.C. July 11, 2018) (citing Fed. R. Crim. P. 11(b)(1) and *United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991)). In addition, the district court must "ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement." *Id.* (citing Fed. R. Crim. P. 11(b)(2), (3)). "An appropriately conducted Rule 11 proceeding raises a strong presumption that the defendant's plea is final and binding and a defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity that presents a formidable barrier in any subsequent collateral proceedings." *United States v. Swinney*, No. 1:13-CR-422 (LMB), 2015 WL 9593651, at *4 (E.D. Va. Dec. 31, 2015) (quoting *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) and *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004)) (internal markings omitted). "Accordingly, a § 2255 movant who accepts a plea agreement 'is bound by the representations he makes under oath during [his] plea colloquy' unless he presents 'clear and convincing evidence' contradicting those representations. *Id.* (quoting *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992)).

Here, Hill does not offer any facts which raised a reasonable doubt regarding his mental competency during the proceedings in *Hill III*. Hill's mental health diagnosis, low IQ, and disability award do not equate to incompetence to plead guilty, and the record explicitly refutes his incompetency claim. First, the Court conducted thorough

plea colloquy hearings in all of Hill's cases, during which Hill engaged in meaningful, intelligent dialogue with the court and counsel. (ECF Nos. 93-1, 93-2, 93-3). During these hearings, Hill stated that he understood the nature of the charges against him, the possible penalties that he faced, and the rights that he was forfeiting by pleading guilty. (ECF Nos. 93-1, 93-2, 93-3). He further explained that he understood the terms of the plea agreements, was satisfied with his legal representation, and personally provided detailed factual bases to support his guilty pleas. (*Id.*). Moreover, Hill was asked if he "ever had occasion to consult or be under the treatment of a psychiatrist, a physician, psychologist, or anyone for mental illness or emotional disorder of any kind" and he responded "No." (ECF Nos. 93-1 at 5, 93-3 at 6). As noted, "[s]olemn declarations in open court carry a strong presumption of verity." *Hernandez*, 2018 WL 3381429, at *6 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Hill's demeanor, interaction, and responses during his hearings plainly contravene his assertions that he was incompetent to plead guilty.

In addition, both of Hill's prior attorneys found no reason to question Hill's mental competency, as indicated in their sworn affidavits. Carr attested that he never believed, during his repeated interactions with Hill, that Hill was operating under any sort of mental disability that would provide a good faith basis to seek a competency evaluation. (ECF No. 84 at 1). Collias likewise affirmed that, in his many dealing and conversations with Hill, Hill always appeared to be intelligent, rational, and affable. (ECF No. 52 at 4). Collias asserted that he never observed from Hill the slightest sign or indication of any mental disease, defect, or disorder. (*Id.*).

Furthermore, Hill's presentence reports demonstrate that Hill intelligently communicated with and provided information to his probation officers without any

17

reported issues. (ECF No. 75-4); *Hill II*, No. 2:15-cr-00026, ECF No. 22. The probation office requested, but never received, any additional information regarding Hill's mental disorder. Hill acknowledged that he had no history of treatment for a mental condition. (ECF No. 75-4 at 15); *Hill II*, No. 2:15-cr-00026, ECF No. 22 at 17. Neither probation officer expressed any concern whatsoever regarding Hill's mental competency in Hill's presentence reports or during Hill's court hearings. (ECF No. 75-4); *Hill II*, No. 2:15-cr-00026, ECF No. 22.

Overall, the record conclusively establishes that Hill was able to understand the nature and consequences of the proceedings against him and to assist in his defense. There is not a scintilla of evidence in the record to indicate that Hill was mentally incompetent to enter guilty pleas in either of his 2015 or 2016 case, or that his guilty plea in *Hill III* was involuntarily entered under duress. Rather, the record very clearly belies such claims. Therefore, the undersigned **FINDS** that Hill fails to assert a cognizable claim that he was incompetent to enter a guilty plea.

### C.    *Hill's Challenge to His Consecutive Sentence is Barred*

As noted, Hill's timely § 2255 motion and supplemental pleadings challenged the effectiveness of his counsel and his competence to plead guilty in *Hill III*. However, on January 28, 2019, long after the deadline to supplement his § 2255 motion expired, Hill filed a motion under 28 U.S.C. § 2241 challenging his "consecutive sentence." (ECF No. 82). He argues that he was punished twice for "the exact same conduct" because his possession of a firearm while on supervised release formed the basis of his revocation sentence in *Hill II*, as well as his enhanced sentence in *Hill III*, and the two sentences were ordered to be served consecutively. (*Id.* at 1). He asks the court to reconsider the "improper sentence" that it imposed. (*Id.*).

18

Despite the title he affixes to his motion, Hill unequivocally challenges the validity of his sentence, not its execution. As such, his filing is not a habeas petition under 28 U.S.C. § 2241; rather, it is another supplement or amendment to his § 2255 motion. The law is well-settled that § 2255 is the exclusive remedy for challenging the validity of a federal judgment and sentence. *See In re Vial*, 115 F.3d 1192, 1194 (4th Cir. 1997). A petition for a writ of habeas corpus under § 2241 is not an additional, alternative, or supplemental remedy to that prescribed under § 2255.

The undersigned acknowledges that on rare occasions, issues reserved for motions under § 2255 may be raised in petitions for habeas relief filed under § 2241. The "savings clause," found at 28 U.S.C. § 2255(e), allows a § 2241 petition to take the place of a § 2255 motion when "§ 2255 proves inadequate or ineffective to test the legality of detention." *Rice v. Rivera*, 617 F.3d 802, 807 (4th Cir. 2010) (citation omitted). To trigger the savings clause, a petitioner challenging his sentence must show that all of the following factors exist: (1) at the time of sentencing, settled law of the circuit or the Supreme Court established the legality of the sentence; (2) subsequent to his direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) he cannot satisfy the gatekeeping provisions of § 2255(h)(2) for second or successive motions; and (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect. *United States v. Wheeler*, 886 F.3d 415, 429 (4th Cir. 2018). The petitioner bears the burden of establishing that a § 2255 motion is inadequate or ineffective by satisfying the *Wheeler* criteria. *See Hood v. United States*, 13 Fed Appx. 72, 2001 WL 648636, at *1 (4th Cir. 2001); *McGhee v. Hanberry*, 604 F.2d 9, 10 (5th Cir. 1979); *Hayes v. Ziegler*, No. 5:11-cv-00261, 2014 WL 670850 (S.D.W. Va. Feb. 20,

2014).

Hill does not argue that § 2255 is inadequate or ineffective to test the legality of detention, nor does he show the presence of all four *Wheeler* factors that would allow him to file a habeas petition in place of a § 2255 motion. In particular, Hill cannot meet the second factor, because he fails to show any change in the substantive law pertaining to the legality of his sentence, or any such change that was made retroactive on collateral review. Therefore, Hill's challenge to his sentence is properly construed as a supplement or amendment to his § 2255 motion.

Hill's proposed amendment focuses on his sentence in *Hill III*, which the Court ordered to be served consecutively to his revocation sentence in *Hill II*. However, the analysis is the same regardless of which sentence Hill challenges, as both sentences were imposed in September 2017. Hill did not appeal either sentence and provides no factual support for equitable tolling. Consequently, the one-year statute of limitations to challenge his sentences expired in 2018, making his proposed amendment filed in January 2019 untimely under the AEDPA, unless it relates back to his original federal habeas petition or the supplements filed within the one-year time frame. (ECF No. 82).

As a general matter, motions under § 2255 may be amended or supplemented in accordance with Rule 15 of the Federal Rules of Civil Procedure. *Barnett*, 2018 WL 7078579, at *6 n.2; *Moye v. United States*, No. 4:10-CR-80-FL-1, 2016 WL 4004580, at *4 (E.D.N.C. May 27, 2016), *report and recommendation adopted,* 2016 WL 3983416 (E.D.N.C. July 25, 2016). Where, as in this case, the proposed amendment is submitted after the expiration of the applicable statute of limitations, it may be permitted pursuant to Rule 15(c) if it "relates back" to the claims in the original pleading. *Moye*, 2016 WL 4004580, at *4. The asserted claim must have arose from the same conduct, transaction,

or occurrence set out in the original pleading. *Id.* In the context of a § 2255 motion, it is not sufficient that the claim arose from the same trial or sentencing as the original pleading. *Id.* As the Fourth Circuit explained, to hold otherwise "would mean that amendments to a § 2255 motion would almost invariably be allowed even after the statute of limitations had expired, because most § 2255 claims arise from a criminal defendant's underlying conviction and sentence," and "[s]uch a broad view of 'relation back' would undermine the limitations period set by Congress in the AEDPA." *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000)

Hill's argument that the court punished him twice for the same conduct by imposing a consecutive sentence is wholly unrelated to his original § 2255 motion and supplements that alleged ineffective assistance of counsel and mental incompetence to plead guilty. *See, e.g., United States v. Rhodes*, No. 3:08CR82, 2013 WL 150335, at *5 (E.D. Va. Jan. 14, 2013) (holding that a § 2255 movant's new claim attacking his sentence differed in both time and type from his original claims challenging his counsel's performance during trial and appeal, and, thus, the challenge to his sentence failed to relate back to his timely-filed claims). Therefore, Hill's challenge to his consecutive sentence is untimely, as it does not relate back to his original motion or supplements filed within the AEDPA period.

The undersigned further notes that Hill did not challenge his sentence in a direct appeal. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Fuller v. United States*, No. 4:13-CR-00072, 2018 WL 3398129, at *2 (E.D. Va. July 11, 2018) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). For that reason, "[m]otions

under § 2255 'will not be allowed to do service for an appeal.'" *Fuller*, 2018 WL 3398129, at *2 (quoting *Sunal v. Large*, 332 U.S. 174, 178 (1947)). "[I]ssues that might have been, but were not, raised on direct appeal may not be raised subsequently in a § 2255 motion." *Id.* (citing *Sanders v. United States*, 230 F.2d 127 (4th Cir. 1956), *cert. denied*, 351 U.S. 955 (1956)). "[W]aived claims are procedurally defaulted absent a showing of cause and actual prejudice." *Hernandez Portillo v. United States*, No. 1:07-CR-00081-GBL, 2014 WL 3615815, at *7 (E.D. Va. July 17, 2014) (citing *United States v. Frady,* 456 U.S. 152, 167 (1982)). "To obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted Petitioner must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains.'" *Id.* A § 2255 movant "can only overcome this procedural bar if he can show a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent ... even in the absence of a showing of cause for the procedural default.'" *Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986)). Hill makes no showing of cause and prejudice for his failure to raise his sentencing claim in a direct appeal.

In addition to these procedural hurdles, Hill waived the right to challenge his sentence in his plea agreement. *Hill III*, No. 2:16-cr-00210, ECF No. 49 at 5-6. "It is well established that a defendant may waive his right to appeal or collaterally attack his conviction and sentence if the waiver was entered into knowingly and voluntarily." *Cousins v. United States*, No. CR 5:11-00090-23, 2015 WL 9595625, at *3 (S.D.W. Va. Dec. 3, 2015), *report and recommendation adopted,* 2016 WL 51265 (S.D.W. Va. Jan. 4, 2016) (citations omitted). "Generally the waiver is valid and enforceable, if a court fully questions a defendant regarding the waiver of his right to appeal during the Rule

11 colloquy." *Id.*

In this case, the Court specifically advised Hill during his plea hearing that he faced consecutive sentences for revocation of supervised release in *Hill II* and his conviction in *Hill III*. The Court also specifically explained to Hill the effect of the appellate and collateral attack waiver in his plea agreement. The Court advised Hill that he faced periods of incarceration of up to 10 years in *Hill III* and up to two years for revocation of supervised release in *Hill II*, and, for both convictions, he collectively faced up to 12 years of incarceration. (ECF No. 93-3 at 11-12, 27-28). Hill agreed that he understood the possible sentences and affirmed that he was waiving his right to challenge his sentence in a direct appeal or collateral attack, except on the basis of ineffective assistance of counsel, so long as his sentence was within the guideline range discussed. (*Id.* at 18-19). The Court indeed sentenced Hill within the expected guideline range, imposing just over three years of incarceration in the 2016 case and 8 months of incarceration for revocation of his supervised release, together totaling less than four years of incarceration. The written plea agreement and statements during the Rule 11 guilty plea hearing establish that Hill knowingly and intelligently waived his right to challenge his sentence in this § 2255 proceeding.

Therefore, in sum, the undersigned **FINDS** that Hill's challenge to his consecutive sentence is untimely under the AEDPA, as it does not relate back to his § 2255 motion or supplements. Further, such claim is procedurally defaulted and barred by the collateral attack waiver in Hill's plea agreement. In any event, Hill's complaint regarding consecutive sentences is without merit. He essentially asserts a double jeopardy violation on the basis of a sentence enhancement; however, the double jeopardy clause generally does not apply to sentence enhancements. *See Monge v.*

*California*, 524 U.S. 721, 728 (1998) ("Historically, we have found double jeopardy protections inapplicable to sentencing proceedings because the determinations at issue do not place a defendant in jeopardy for an 'offense.'") (internal citations omitted). Sentence enhancements have not been construed as punishing the same behavior twice, rather, "they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction.'" *Id.* (quoting *United States v. Watts*, 519 U.S. 148, 154 (1997)). Furthermore, the Court was statutorily authorized to impose consecutive sentences, 18 U.S.C. § 3584(a), and directed to do so by United States Sentencing Guideline § 7B1.3(f), which states:

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted form the conduct that is the basis of the revocation of probation or supervised release.

U.S.S.G § 7B1.3(f) (2016). Therefore, consecutive sentences were appropriate.

### D.   *Hill Fails to State a Claim of Ineffective Assistance of Counsel*

Turning to the remainder of Hill's § 2255 motion, the undersigned considers Hill's claims that his attorneys provided constitutionally deficient representation in *Hill III*. When a movant alleges ineffective assistance of counsel under § 2255, the movant claims a violation of rights guaranteed by the Sixth Amendment to the United States Constitution. *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual prejudice from counsel's deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S.Ct. at 787)); *see also, Strickland,* 466 U.S. at 687. It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In the context of a guilty plea, the movant carries a heavy burden under § 2255. By entering a guilty plea, the criminal defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id.* Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221-222 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.*

As such, a criminal defendant is precluded from raising alleged constitutional deprivations that occurred prior to pleading guilty and "may only attack the voluntary and intelligent character of the guilty plea" by demonstrating that his counsel's performance was inadequate under the Sixth Amendment. *Tollett,* 411 U.S. at 267; *see also, Fields v. Attorney General of State of Md.,* 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). In other words, the movant under § 2255 must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence,

but the defendant must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

### 1. Pretrial Hearing

Hill alleges that Carr waived his pretrial hearing without his knowledge or consent. (ECF No. 46 at 1). Based on the record, it appears that Hill refers to the fact that his counsel, along with counsel for the United States, advised the Court that there were no outstanding pretrial motions or issues to be heard at a pretrial hearing. *Hill III,* No. 2:16-cr-00210, ECF No. 15. Nevertheless, as stated in the Court's order and in Carr's affidavit, the pretrial hearing was continued generally, but Carr did not waive Hill's pretrial hearing. *Id.*; (ECF No. 55 at 2). Therefore, the undersigned **FINDS** that Hill does not present any cognizable claim that Carr's performance was objectively unreasonable or that Hill would have proceeded to trial, if not for Carr's acquiescence to the general continuance of the hearing.

### 2. Rule 404(b) Evidence

Hill's next ineffective assistance of counsel claim concerns evidence of his prior possession of a firearm in 2014, which the United States intended to introduce under Rule 404(b) of the Federal Rules of Evidence. Hill states that Carr did not plan to challenge the introduction of such evidence, which prompted Hill to file a *pro se* motion *in limine* to exclude the evidence at trial. (ECF No. 46 at 1). Hill asserts that his subsequent attorney, Collias, never addressed the *pro se* motion *in limine*. (*Id.* at 2).

First, concerning the claim against Carr, the United States disclosed in supplemental discovery responses that it intended to introduce evidence regarding Hill's prior possession of a firearm in 2014. *Hill III,* No. 2:16-cr-000210, ECF No. 13 at 2.

According to Carr's sworn affidavit, Hill agreed with Carr's strategic decision not to move to exclude the evidence because, in Carr's professional opinion, the Court would admit the evidence anyway. (ECF No. 55 at 2). Also, Carr swears that he explained to Hill that he believed that the evidence would actually be beneficial to the defense and that an objection could always be made at a later date, as it would not likely be ruled upon until the time of trial. (*Id.*). Hill adamantly disputes that he agreed with Carr's plan not to file a motion to exclude the evidence and questions how evidence of his prior possession of a firearm could possibly be beneficial to his defense. (ECF No. 74 at 2).

As aptly noted by the United States in its response to Hill's habeas motion and explained in the preceding discussion of the applicable law under *Strickland*, strategic decisions by counsel, such as whether to file a motion *in limine*, are rarely deemed objectively unreasonable. More importantly, Hill cannot demonstrate that he was prejudiced by Carr's decision not to move to exclude the Rule 404(b) evidence under the facts of this case. After Carr withdrew as Hill's counsel, Hill's subsequent attorney, Collias, filed a motion *in limine* seeking to exclude the 404(b) evidence. *Hill III,* No. 2:16-cr-000210, ECF No. 26. Thus, the motion was pending at the time Hill pleaded guilty.

As to Hill's claim that Collias "never addressed" Hill's *pro se* motion *in limine*, Collias is correct in stating in his affidavit that he had no authority to force the court to rule on the motion before trial. (ECF No. 52). Furthermore, as stated by Collias, the *pro se* motion was filed before Collias was appointed to represent Hill, and when Collias assumed representation, he specifically filed a motion *in limine* on Hill's behalf to exclude the Rule 404(b) evidence.

Based on the above, even if Carr's performance was deficient in not moving to exclude the evidence, it was corrected by Collias filing a motion *in limine.* Hill simply did not suffer any prejudice from this alleged violation. Accordingly, the undersigned **FINDS** that Hill does not assert a viable claim under *Strickland* regarding the Rule 404(b) evidence.

### 3. Trial Date

Hill next claims that Carr continued his trial date against his wishes. (ECF Nos. 46 at 1, 74 at 2-3). In his affidavit, Carr explains that he moved to continue the trial in order to consult with a gunshot residue expert in response to the government's disclosure of the gun shot residue test results less than two weeks before trial. (ECF No. 55 at 2); *see also Hill III*, No. 2:16-cr-000210, ECF No. 17. Carr attached to his affidavit what he authenticated as contemporaneous notes from his meeting with Hill, which indicate that Carr explained the gun shot residue test results and the need for a continuance to Hill. According to the meeting notes, Hill stated that he understood and agreed to the continuance. (ECF No. 55 at 2, 7). Hill disputes that he agreed to the continuance and asserts that he left Carr voicemails indicating the same. (ECF No. 74 at 2-3). Hill argues that he did not believe that a continuance was necessary because the amount of alleged gunshot residue on his face and hand was not consistent with firing a gun and could be explained by the fact that he was around fireworks or fountain sparklers. (ECF No. 78 at 9). Also, Hill contends that the firearm that he was accused of possessing had not been fired, as indicated by the fact that all of its ammunition was found intact and no spent rounds were discovered. (*Id.*).

Regardless, not all decisions that a criminal defense attorney makes require the defendant's consent. As the Fourth Circuit explained, certain fundamental issues, such

29

as the decision to plead guilty, waive a jury trial, take the stand, or file an appeal, require the express consent of the defendant. *United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010). Other tactical decisions are left to the sound discretion of counsel, even if the defendant expresses disagreement. *Id.* Simply put, the fact that a defendant disagreed with a decision, as Hill alleges here, does not transform counsel's actions into ineffective assistance. While a criminal defendant is entitled to a speedy trial, the undisputed facts show that Carr sought a continuance for a valid reason in order to prepare a defense to rebut incriminating evidence that was disclosed less than two weeks before trial. Hill was charged with possession of a firearm by a convicted felon and the laboratory results indicated that he had recently fired a gun. Clearly, such evidence was incriminating and left Carr with little choice but to continue the trial to prepare a defense. The record in this matter shows that Carr made an informed strategic decision upon consideration of the proper facts and his decision to move for a continuance could hardly be considered objectively unreasonable. In fact, a rational mind could argue that Carr may have been ineffective by failing to seek a continuance under such circumstances. Therefore, the undersigned **FINDS** that Hill fails to assert any viable claim under *Strickland* that Carr's actions in moving for a continuance were objectively unreasonable, or that Hill would not have pled guilty had Carr not moved to continue his trial.

### 4. Plea Agreement

Hill next contends that Collias's representation was ineffective because he insisted that Hill "take a plea right from the beginning," despite exculpatory information, which included fingerprints and DNA that could not be linked to Hill. (ECF No. 46 at 1-2). Hill claims that Collias had a "vague attitude towards the exculpatory information made available." (*Id.*). In response to this claim of ineffective assistance of

counsel, Collias states that, after reviewing the evidence in the case and concluding that it was strong evidence against Hill, he advised Hill that it would be in his best interest to attempt to negotiate a plea deal rather than go to trial. (ECF No. 52 at 2). Collias maintains that he still believes that it was in Hill's best interest to plead guilty to the possession of a firearm charge. (*Id.*). According to Collias, the firearm that was found a few feet from where Hill was arrested did not contain any identifiable fingerprints, which Collias determined to be neither inculpatory nor exculpatory. (*Id.*). However, Hill's DNA was identified on the gun magazine, which Collias found to be highly incriminating. (*Id.* at 2-3). Despite the evidence against Hill, Collias states that he told Hill that he could proceed to trial if he did not want to plead guilty. (*Id.* at 3). Collias argues that there was not any "exculpatory evidence" in Hill's case and that, if such evidence had existed, he would certainly not have had a vague attitude toward it. (*Id.*).

In response to Collias's affidavit, Hill argues that there was further available exculpatory evidence, including video footage from the officer's body camera, which did not show Hill throwing anything, contrary to the officer's assertion that he saw Hill throw an object that was determined to be a pistol. (ECF No. 78 at 10). He states that, rather than viewing the evidence as exculpatory, Collias told him that the body camera probably did not capture Hill from "the right angle." (*Id.*).

"When evaluating objective reasonableness under the prejudice prong of *Strickland,* the challenger's subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Christian v. Ballard*, 792 F.3d 427, 452–53 (4th Cir. 2015) (markings and citation omitted). In other words, Hill cannot satisfy *Strickland* "merely by telling the court now that he would have gone to trial then if he had gotten different advice" from

Collias. *Id.* Rather, Hill must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.*

In this case, Hill was charged with possession of a firearm by a convicted felon. (ECF No. 75-2). On the date in question, state authorities heard a gunshot and an officer observed Hill drop a loaded pistol. (ECF No. 75-4 at 4-5). Laboratory tests identified gunshot residue on Hill's right hand and face. (*Id.* at 6). No fingerprints were identified on the pistol, but Hill's DNA was found on the gun magazine. (ECF Nos. 75-4 at 6, 89 at 8). Specifically, there was a mixture of DNA on the gun magazine, but the primary results were consistent with Hill's DNA. (*Id.*). The remainder of the pistol had DNA from two or more individuals, but due to the "low level nature of the sample and the stochastic effects observed," Hill could neither be included or excluded as a contributor to the DNA results obtained from the pistol. (*Id.*).

In consideration of the above evidence, Collias determined that it would be in Hill's best interest to plead guilty and, as a result, lessen the length of his sentence by accepting responsibility for the crime. Hill portrays in his § 2255 motion that his attorney never sincerely considered any evidence that he might be innocent and instead immediately pushed him to accept a plea agreement. However, he does not present any claims of constitutional magnitude because he fails to show that Collias's advice to plead guilty was unreasonable under the circumstances.

The United States had witness testimony and forensic evidence to demonstrate that Hill possessed the firearm in question. The fact that Hill disputed Collias's interpretation of the strength of the evidence is not enough to establish ineffective assistance of counsel under *Strickland*. Hill does not offer any evidence that Collias misled him or unduly coerced him into signing the plea agreement. Rather, Collias

presented Hill with his well-reasoned professional opinion, based upon an evaluation of the evidence, that Hill should accept the plea deal. Collias also recognized and explained to Hill the benefit of a guilty plea; that being, that the acceptance of responsibility led to a reduction of the offense level under the Sentencing Guidelines, which typically resulted in a shortened sentence of imprisonment. Collias acted precisely as counsel guaranteed by the Sixth Amendment. *Missouri v. Frye*, 566 U.S. 134, 145 (2012) (holding that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused"). Accordingly, the undersigned **FINDS** that Hill fails to state a claim under *Strickland* regarding Collias's representation with respect to the plea agreement.

### 5. Mental Competency

Hill next asserts that Collias was ineffective in addressing his mental competency. He states that "at some point" he advised Collias that he "suffered from a mental disability and that he was deemed disabled by the Social Security Administration due to this mental disability." (ECF No. 46 at 2). Hill alleges that Collias "failed to address the issue" with the Court. (*Id.*). As noted, there is little information in the record regarding Hill's mental disability. Hill filed a letter from the Social Security Administration, stating that he was approved for supplemental security income in May 2007 and his diagnosis was "Organic Mental Disorders and Anxiety Disorders." (ECF No. 69). He also offered a page from a mental examination conducted in 2014, indicating that he had a low IQ, had trouble with memory and concentration, and suffered headaches. According to the probation office, Hill could not provide any detailed information about his mental health disorder, and the probation officer requested, but never received, any additional information from Hill. *Hill III,* No. 2:15-cr-00026, ECF No. 22 at 16; (ECF No. 75-4 at

33

15). In his affidavit, Collias acknowledges that Hill advised him that he believed that he suffered from a mental disability and applied for disability benefits. (ECF No. 52 at 3). However, Collias states that he did not take any action with respect to that information for several reasons, including that Hill did not direct him to take any action; Collias was already aware of Hill's mental diagnosis; and, most importantly, Collias did not see the slightest sign or indication of any mental disease, defect, or disorder in his numerous interactions with Hill. (*Id.* at 4). Rather, according to Collias, Hill always appeared to be intelligent, rational, and affable. (*Id.*).

"An attorney's duty, of course, does not mandate the exploration of the issues of sanity and/or competency in every instance." *Wood v. Zahradnick*, 430 F. Supp. 107, 111 (E.D. Va. 1977), *aff'd* 578 F.2d 980 (4th Cir. 1978). Instead, defense counsel's responsibility to investigate his client's competency arises only when "the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to a defendant's mental condition." *Id.* Hill does not offer any evidence that his behavior, communications with the court or counsel, or psychiatric history raised a reasonable doubt regarding his mental competency. Furthermore, Hill fails to show that he was prejudiced by Collias not addressing his mental competency because there is not a reasonable probability that the Court would have granted a competency hearing, much less concluded that Hill was unable to consult with Collias with a reasonable degree of rational understanding and comprehend the proceedings against him. As previously discussed, a mental health diagnosis does not establish mental incompetence. Furthermore, Hill's conduct during his plea hearing, Collias's affidavit, and Hill's presentence report clearly demonstrate that Hill appreciated the charges that he faced and participated in his defense in *Hill III*.

Therefore, the undersigned **FINDS** that Hill fails to assert a claim that his counsel was constitutionally deficient in not requesting a mental competency evaluation or investigating his mental competency. *See, e.g., Mann v. United States*, 66 F. Supp. 3d 728, 738–39 (E.D. Va. 2014) (finding that the petitioner did not overcome the "strong presumption" that his counsel's conduct in not seeking a competency hearing was within the wide range of reasonable professional assistance, nor did the petitioner show a reasonable probability that counsel could have established that the petitioner was not competent).

### 6. 911 Callers

In his final claim under § 2255, Hill asserts that his attorneys, Carr and Collias, were ineffective because they did not subpoena for trial three 911 callers—Kenny, Burdette, and Ford—which Hill contends could have provided favorable testimony. (ECF No. 59).

As an initial matter, Hill's claim regarding Kenny and Burdette is facially without merit, as Collias indeed subpoenaed both individuals to testify at trial. (ECF No. 60). Regarding the third caller, Collias states that he did not subpoena Ford, because he determined that Ford did not possess any information that would aid the defense. (*Id.* at 2). According to Collias, Ford merely stated to the 911 dispatcher that he heard one or two gunshots in the vicinity, and Collias found such statement to be neither inculpatory nor exculpatory on the issue of whether Hill possessed the firearm in question. (*Id.*). Collias asserts that he listened to the recording of Ford's 911 call with Hill, and Hill agreed that there was no cause to interview or subpoena Ford, as there was no indication that he had any further information regarding the gunshots. (*Id.* at 2-3). Hill argues that, to his recollection, Ford stated in the 911 call that he heard people arguing and a gunshot.

(ECF No. 66 at 2). He agrees that he never asked Collias to contact Ford, but states that it was because Collias told him "that he simply couldn't locate Ford." (*Id.*).

Nevertheless, Hill does not make any showing that his attorneys' decisions not to subpoena Ford were objectively unreasonable, nor does he adduce that Ford would have provided any testimony, which reasonably would have led Hill to proceed to trial, if Ford was subpoenaed. By Hill's own admission, both Burdette and Kenny could testify that they heard or observed an argument before the gunshot was fired. (*Id.*). Hill does not identify any critical information that Ford could have added. Vague, unsupported allegations of ineffective assistance of counsel based on an attorney's failure to subpoena or call witnesses are insufficient under *Strickland. See, e.g., Bassette v. Thompson*, 915 F.2d 932, 940–41 (4th Cir. 1990) (finding that a petitioner cannot establish ineffective assistance of counsel under *Strickland* on the general claim that additional witnesses should have been called, but must proffer evidence of what their testimony would have been); *Slate v. Vargo*, No. 1:12-CV-1477, 2014 WL 3378627, at *7 (E.D. Va. July 8, 2014) ("In federal jurisprudence it is well established that a claim of ineffective assistance predicated on a failure to call witnesses fails where affidavits verifying the witnesses' testimony are not provided."); *Johnson v. McCall*, No. 2:09-1532-P.M.D, 2010 WL 936726, at *4 (D.S.C. Mar. 15, 2010) ("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.").

Therefore, the undersigned **FINDS** that Hill fails to state a claim under *Strickland* regarding witness testimony from the 911 callers.

### E.    Hill's Other Pending Motions are Moot

As noted, Hill filed motions requesting to be released on bond while the Court considers his § 2255 motion, the appointment of counsel and a guardian *ad litem* in this

§ 2255 case, summary judgment, and a "writ of mandamus" to preclude consideration of Carr's supplemental affidavit. (ECF Nos. 53, 67, 68, 72, 79, 80, 82, 83, 87, 88, 89). Given that Hill does not assert any potentially meritorious claim for relief under § 2255, the undersigned **FINDS** that the other pending motions in this matter should be **DENIED** as moot.

### IV.    <u>Proposal and Recommendations</u>

The undersigned **GRANTS** Hill's Motion to Amend. (ECF No. 59). However, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Movant's § 2255 motion, (ECF No. 46), be denied and this matter be **DISMISSED**, with prejudice, and removed from the docket of the court. The undersigned further **RECOMMENDS** that Movant's other pending motions, (ECF Nos. 53, 67, 68, 72, 79, 80, 82, 83, 87, 88, 89), be **DENIED** as moot.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate

review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:** May 21, 2019

Cheryl A. Eifert
United States Magistrate Judge